UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

*****************************
Briana S. Pittman,                        *
    Plaintiff                              *
                                              *
v.                                        *    Case No. 1:22-cv-00344-SE
                                              *
                                              *
Trustees of Dartmouth College,            *
    Defendant                              *
*****************************

**FIRST AMENDED COMPLAINT**
Jury Trial Requested

NOW COMES the plaintiff, Briana S. Pittman, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.    Parties:**

1.    The plaintiff, Briana S. Pittman, is a former employee of Dartmouth College and resides at 509 VT-110, Apartment A, Tunbridge, Vermont 05077.

2.    The defendant, Trustees of Dartmouth College is a non-profit corporation organized and existing under the laws of New Hampshire that maintains its principal place of business at 63 South Main Street, Suite 301, Hanover, New Hampshire 03755, in this District.

**II.   Jurisdiction and Venue:**

3.    The Court may exercise subject matter jurisdiction pursuant 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), providing for a cause of action for violation of the Fair Labor Standards Act [hereafter "FLSA"] in any Federal court of competent jurisdiction.

4.    The Court has supplemental jurisdiction over the plaintiff's state law claim as it and the plaintiff's FLSA claims arise from her employment with the defendant.

1

5.  This court has personal jurisdiction over the defendant because it is a resident of New Hampshire.

6.  Venue is proper because a substantial part of the acts and omission giving rise to this action occurred within this judicial district.

### III. Facts:

7.  The Trustees of Dartmouth College operate an institution of higher education in Hanover, New Hampshire. The institution thus is an "enterprise engaged in commerce or in the production of goods for commerce" for the purposes of the FLSA. See 29 U.S.C. § 203 (s)(1)(B).

8.  The defendant began employing Ms. Pittman as a First Assistant Rowing Coach to its Women's Rowing Team on or about September 1, 2020.

9.  Ms. Pittman worked continuously throughout the year, without taking leave during academic break and vacation periods.

10. In Ms. Pittman's role as Assistant Rowing Coach, Ms. Pittman had no power to hire or fire employees.

11. Moreover, in Ms. Pittman had no ability to exercise any independent discretion as to any matters of significance. As to all significant matters in Ms. Pittman's employment, she had to follow the directives of her supervisor, Women's Rowing Head Coach Nancy LaRocque.

12. Ms. Pittman spent half of her work time guiding and instructing student athletes in practice, training, and competition, and the other half of her work time performing recruitment related duties, completing compliance paperwork, attending meetings, and maintaining equipment in the boathouse.

13. As an <u>Assistant</u> coach, when Ms. Pittman was performing her guiding and instructing duties, she had little freedom to determine how she did so, as she was compelled to follow instructions from Head Coach LaRocque.

14. The defendant paid Ms. Pittman an annual salary of $45,834.96, paying this salary from September 1, 2020, through the termination of her employment on or about February 22, 2022.

15. Had Ms. Pittman worked only 40 hours a week for the defendant, her hourly rate of pay, based on her $45,834.96 annual pay, would have been approximately $22 an hour.

16. However, Ms. Pittman found she frequently was called upon to work more than 40 hours in a work week [hereafter "overtime"].

17. For example, Ms. Pittman worked approximately 12 hours overtime on Saturday May 1, 2021, at a scrimmage in Boston.

18. Ms. Pittman worked approximately 12 hours overtime on May 15, 2021, at a scrimmage in Williamstown, Massachusetts.

19. Ms. Pittman worked approximately 24 hours of overtime Wednesday June 9 to Saturday June 13, 2021, on a recruitment trip at U.S. Rowing Youth Nationals, in Sarasota, Florida.

20. Ms. Pittman worked approximately 24 hours of overtime relating to the Head of the Charles Regatta, held in Boston on Friday October 22, 2021 to Sunday October 24, 2021.

21. Ms. Pittman worked approximately 36 hours of overtime while in training with the rowing team in Deland, Florida, from December 1 to December 10, 2021.

22. Ms. Pittman further worked approximately 12 hours of overtime during a recruiting trip in Boston, on Saturday January 22, 2022.

23. Ms. Pittman also estimates that she worked approximately 15-20 hours of overtime relating to various official visits (which are documented on her Dartmouth calendar in the exclusive possession of the defendant).

24. Ms. Pittman was <u>not</u> compensated any amount additional to her annual salary for her overtime hours worked, much less at a rate of one and one-half her hourly rate of pay, or approximately $33 per overtime hour.

25. The defendant further elected to compensate Ms. Pittman, a woman, at a *lesser* rate than it compensated at least one male employee who held a *lesser* rank on the Women's Rowing Team than Ms. Pittman held – that of *Second* Assistant Rowing Coach.

26. This male, Second Assistant Coach, Trevor Michelson, held equal or *lesser* qualifications than Ms. Pittman, and had equal or *lesser* job responsibilities than Ms. Pittman despite his *higher* rate of pay.

27. Second Assistant Rowing Coach, Trevor Michelson, was compensated at a higher rate of pay than Ms. Pittman at all times relevant to this litigation.

28. Ms. Pittman reported to her supervisor, Coach Nancy LaRocque, on several occasions her concern that the defendant was paying her less than the defendant paid Second Assistant Coach Michelson and that the disparity was based on <u>gender</u>.

29. The defendant took <u>no</u> remedial action in response to Ms. Pittman's expression of her concerns.

30. More troublingly, Coach LaRocque *retaliated* against Ms. Pittman in response to Ms. Pittman's repeated reports that she believed she was the subject of gender discrimination in the form of pay disparity.

31.     Specifically, after Ms. Pittman reported her concern about gender-based pay disparity to Coach LaRocque, Coach LaRocque and her male counterpart, Head Coach of the Men's Rowing Team, had a heated argument relating to their commonly used boathouse, such that Coach LaRocque was left in tears.

32.     At a social gathering attended by rowing coaches, Ms. Pittman defended Coach LaRocque in the incident, describing the Men's Coach as exemplifying "toxic masculinity" in the incident.

33.     This comment relating to sexism in Dartmouth Rowing, in addition to the gender-based pay disparity reports made by Ms. Pittman relating to Dartmouth Rowing, incensed Coach LaRocque such that she set about contacting several people who attended the gathering to learn what else Ms. Pittman was saying about sexism in Rowing at Dartmouth.

34.     After this inquisition, Coach LaRocque cut off communication with Ms. Pittman, making her work untenable.  For example, Coach LaRocque refused to speak with Ms. Pittman in practice or about practice.  At Rowing practice, Coach LaRocque would not even acknowledge Ms. Pittman's presence.

35.     On or about February 6, 2022, Coach LaRocque even declined to inform Ms. Pittman that she had changed the time and location of practice, such that Ms. Pittman arrived to a scheduled practice with no work to perform at all.

36.     Coach LaRocque's cessation of communication with Ms. Pittman, and social isolation and marginalization of Ms. Pittman, altered the terms and conditions of Ms. Pittman's employment such that she felt compelled to resign on or about February 19, 2022, as any reasonable employee would do under the circumstances of being excluded from work by her supervisor.

37. Ms. Pittman timely filed a Charge of Discrimination with the New Hampshire Commission for Human Rights (the HRC) on August 16, 2022. Exhibit A. The Charge was dually filed with the United States Equal Employment Opportunity Commission. Ms. Pittman alleged sex discrimination and retaliation in her Charge, in violation of Title VII and the New Hampshire Law Against Discrimination, RSA 354-A.

38. By Order dated January 8, 2023, the HRC consented in writing to early removal of the Charge from the agency to allow the plaintiff to amend her Complaint in the instant action to add her Title VII and RSA 354-A claims, so that all the plaintiff's claims connected with her employment with the defendant could be adjudicated in one (1) action. Exhibit B.

39. The EEOC issued the plaintiff a Notice of Right to Sue that plaintiff's counsel received on January 25, 2023. Exhibit C. The within First Amended Complaint is filed within 90 days of the plaintiff's receipt of such Notice, as required.

## COUNT I

### (Violation of Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1))

40. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

41. 29 U.S.C. § 206(d)(1) provides that "No employer … shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages … at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

42. To state a prima facie case for violation of this provision, the plaintiff must demonstrate that: "(i) the employer pays different wages to employees of the opposite sex; (ii) the

employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions." Mullenix v. Forsyth Dental Infirmary for Child., 965 F. Supp. 120, 139 (D. Mass. 1996).

43. Ms. Pittman was qualified for her position as an Assistant Rowing Coach.

44. The defendant compensated Ms. Pittman at a lesser rate than it compensated male employees with lesser title, equal or lesser qualifications, and equal or lesser job responsibilities.

45. Ms. Pittman and Mr. Michelson worked under the same conditions as both were supervised by Coach LaRocque on the defendant's Women's Rowing Team.

46. By compensating Ms. Pittman at a lesser rate than it compensated such male employees, the defendant violated the Equal Pay Act.

47. As a direct and proximate result of the defendant's violation of the Equal Pay Act, Ms. Pittman is entitled to damages, including, but not limited to, lost pay, liquidated damages, and attorney's fees and costs.

## COUNT II

**(Violation of Fair Labor Standards Act, 29 U.S.C. § 201, et. seq)**

48. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

49. The defendant operates an institution of higher education and is an "enterprise engaged in commerce or in the production of goods for commerce" for the purposes of the FLSA. See 29 U.S.C. § 203 (s)(1)(B).

50. 29 U.S.C. § 207 (a)(1) provides: "no employer shall employ any of his employees who in any workweek … is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives

7

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

51.   The plaintiff does not fall under any exemption set forth in the FLSA, given that the plaintiff had no power to hire or fire employees, that the plaintiff did not supervise any employees, that the plaintiff could not exercise independent discretion in matters of significance, and that the plaintiff's work did <u>not</u> involve teaching student athletes at her discretion but rather involved recruitment and maintenance duties, and instructing student athletes only as directed by Coach LaRocque.

52.   As such, the defendant misclassified Ms. Pittman by classifying her as an exempt employee. The defendant should have classified Ms. Pittman as non-exempt and should have compensated her at a time-and-a-half rate for hours that she worked in excess of forty (40) each work week of her employment.

53.   The defendant's misclassification of Ms. Pittman as an exempt employee, and the defendant's corresponding failure to pay Ms. Pittman overtime compensation for hours in excess of forty (40) that she worked each work week constitute violations of the FLSA.

54.   Ms. Pittman worked at least an estimated 135 overtime hours for which she was not compensated at a rate of one and one-half her regular hourly rate of pay.

55.   As a direct and proximate result of the defendant's violation of the FLSA, Ms. Pittman is entitled to unpaid overtime compensation, liquidated damages, and attorney's fees and costs.

## COUNT III

### (Wrongful Discharge)

56. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

57. Ms. Pittman performed acts encouraged by public policy when she reported on multiple occasions her concern that the defendant was compensating her at a lesser rate than it compensated male employees with less title, equal or lesser job qualifications, and equal or less job responsibilities. The defendant acted with bad faith and malice towards Ms. Pittman, failing to take any appropriate remedial or investigatory action in responses to the concerns she reported, and ceasing employment-related communications with her so as to impede performance of her job responsibilities.

58. The defendant also retaliated against Ms. Pittman for performing acts encouraged by public policy by ceasing employment-related communications, hindering her from performance of her job responsibilities.

59. The defendant's treatment of Ms. Pittman amounted to a constructive discharge because any reasonable employee would have felt compelled to resign under the circumstances that Ms. Pittman faced, being subject to gender discrimination based on pay, having her employer ignore her concerns about such discrimination, and having her employer shut her off from employment-related communications so as to exclude her from performance of her job responsibilities.

60. As a direct and proximate result of the defendant's wrongful discharge of Ms. Pittman, Ms. Pittman has suffered and continues to suffer damages, including, but not limited to,

lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

61. Ms. Pittman is further entitled to enhanced compensatory damages based on the wanton, malicious, and oppressive nature of defendant's conduct.

## COUNT IV

### (Violation of Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3))

62. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

63. 29 U.S.C. § 215 (a)(3) provides that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint … under or related to this chapter."

64. The elements of a retaliation claim under the FLSA require plaintiff to demonstrate her engagement in statutorily protected activity, the fact of her dismissal, and a causal connection between the former and the latter. Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Cir. 2002).

65. Ms. Pittman engaged in activity protected by the FLSA where she repeatedly reported her concern to Coach LaRocque that the defendant was paying her less than the defendant paid Second Assistant Coach Michelson and that the disparity was based on gender.

66. Thereafter Coach LaRocque retaliated against Ms. Pittman, by creating a hostile work environment for Ms. Pittman, marginalizing and isolating her, and excluding her from her work assignments, such that ultimately Ms. Pittman was constructively discharged from her employment.

67. There is a causal nexus between Ms. Pittman's multiple complaints of gender-discrimination in her Rowing pay and Ms. LaRocque's hostility, as shown by the timing of the

hostility, coming immediately after Ms. Pittman decried additional gender-discriminatory conduct in Dartmouth Rowing at the Rowing social gathering.

68. As a direct and proximate result of Ms. LaRocque's hostility, resulting in Ms. Pittman's discharge, Ms. Pittman has suffered and continues to suffer damages, including, but not limited to, lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

69. In addition to economic relief and liquidated damages in an amount equaling her economic losses, 29 U.S.C. § 216 (b) broadly affords Ms. Pittman "such legal or equitable relief as may be appropriate" to compensate her for her emotional losses stemming from the defendant's retaliation.

## COUNT V

### (Violation of Title VII—Sex Discrimination)

70. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

71. Ms. Pittman as a female is a member of a protected class.

72. Ms. Pittman was qualified for her position as Assistant Rowing Coach.

73. The defendant discriminated against Ms. Pittman based on sex by compensating her at a lesser rate than it compensated a male coach who held a lesser rank than Ms. Pittman, equal or lesser job responsibilities, and equal or lesser qualifications.

74. Ms. Pittman reported to her supervisor her concern that the pay disparity constituted sex discrimination.

75. Despite Ms. Pittman's reports of sex discrimination, the defendant neither conducted any investigation nor took any remedial action.

76. The sex discrimination to which the defendant subjected Ms. Pittman culminated in her constructive discharge on or about February 22, 2022.

77. As a direct and proximate result of the defendant's sex discrimination in violation of Title VII, Ms. Pittman has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Pittman is further entitled to punitive damages because the defendant acted with malice and/or willful disregard for Ms. Pittman's federally protected right to be free from sex discrimination. In addition, Ms. Pittman is entitled to her attorney's fees and costs.

## COUNT VI

### (Sex Discrimination in Violation of RSA 354-A)

78. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

79. Ms. Pittman as a female is a member of a protected class.

80. Ms. Pittman was qualified for her position as Assistant Rowing Coach.

81. The defendant discriminated against Ms. Pittman based on sex by compensating her at a lesser rate than it compensated a male coach who held a lesser rank than Ms. Pittman, equal or lesser job responsibilities, and equal or lesser qualifications.

82. Ms. Pittman reported to her supervisor her concern that the pay disparity constituted sex discrimination.

83. Despite Ms. Pittman's reports of sex discrimination, the defendant neither conducted any investigation nor took any remedial action.

84. The sex discrimination to which the defendant subjected Ms. Pittman culminated in her constructive discharge on or about February 22, 2022.

85. As a direct and proximate result of the defendant's sex discrimination in violation of RSA 354-A, Ms. Pittman has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Pittman is further entitled to enhanced compensatory damages because the defendant acted with willful or reckless disregard of Ms. Pittman's right to be free from sex discrimination protected by RSA 354-A. In addition, Ms. Pittman is entitled to her attorney's fees and costs.

## COUNT VII

### (Retaliation in Violation of Title VII)

86. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

87. Ms. Pittman as a female is a member of a protected category.

88. Ms. Pittman was qualified for her position as Assistant Rowing Coach.

89. Ms. Pittman engaged in activity protected by Title VII, reporting to her supervisor her concern that she was subject to sex discrimination.

90. Ms. Pittman suffered retaliation as a result of her protected activity. Her supervisor failed and refused to communicate with her, impeding Ms. Pittman's ability to perform her job functions. The defendant marginalized and isolated Ms. Pittman, excluding her from work assignments, leading to Ms. Pittman's constructive discharge.

91. As a direct and proximate result of the defendant's retaliation against Ms. Pittman in violation of Title VII, Ms. Pittman has suffered and continues to suffer damages, including but

not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Pittman is further entitled to punitive damages because the defendant acted with malice and/or willful disregard for Ms. Pittman's federally protected right to be free from retaliation for grieving sex discrimination. In addition, Ms. Pittman is entitled to her attorney's fees and costs.

### COUNT VIII

### (Retaliation in Violation of RSA 354-A)

92. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

93. Ms. Pittman as a female is a member of a protected category.

94. Ms. Pittman was qualified for her position as Assistant Rowing Coach.

95. Ms. Pittman engaged in activity protected by RSA 354-A, reporting to her supervisor her concern that she was subject to sex discrimination.

96. Ms. Pittman suffered retaliation as a result of her protected activity. Her supervisor failed and refused to communicate with her, impeding Ms. Pittman's ability to perform her job functions. The defendant marginalized and isolated Ms. Pittman, excluding her from work assignments, leading to Ms. Pittman's constructive discharge.

97. As a direct and proximate result of the defendant's retaliation against Ms. Pittman in violation of RSA 354-A, Ms. Pittman has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Pittman is further entitled to enhanced compensatory damages because the defendant acted with willful or reckless disregard

for Ms. Pittman's right to be free from retaliation for grieving sex discrimination, protected by RSA 354-A.  In addition, Ms. Pittman is entitled to her attorney's fees and costs.

WHEREFORE, the plaintiff, Briana S. Pittman respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury and after trial;

B. Find the defendant liable for violations of the Equal Pay Act;

C. Find the defendant liable for violations of the Fair Labor Standards Act;

D. Find the defendant liable for wrongful discharge;

E. Find the defendant liable for sex discrimination in violation of Title VII and RSA 354-A;

F. Find the defendant liable for retaliation in violation of Title VII and RSA 354-A;

G. Award the plaintiff damages for lost wages, lost employment benefits, and lost earning capacity caused by her discharge;

H. Award the plaintiff damages for lost wages, lost employment benefits, and lost earning capacity caused by disparate treatment based on gender;

I. Award the plaintiff damages for unpaid overtime compensation;

J Award the plaintiff liquidated damages;

K. Award the plaintiff damages for emotional distress, humiliation , inconvenience, and lost of enjoyment of life;

L. Award the plaintiff enhanced compensatory damages;

M. Award the plaintiff punitive damages;

N. Award the plaintiff for reasonable attorney's fees;

O. Award the plaintiff interest and costs; and

P. Grant such other and further relief as is just and equitable.

|  |  | Respectfully submitted,<br>BRIANA S. PITTMAN<br>By her attorneys,<br>DOUGLAS, LEONARD & GARVEY, P.C. |
|---|---|---|
| Dated:  February 24, 2023 | By: | /s/ Benjamin T. King<br>Benjamin T. King, NH Bar #12888<br>14 South Street, Suite 5<br>Concord, NH 03301<br>(603) 224-1988<br>benjamin@nhlawoffice.com |
|  | By: | /s/ Megan Douglass<br>Megan Douglass, NH Bar #19501<br>14 South Street, Suite 5<br>Concord, NH 03301<br>(603) 224-1988<br>mdouglass@nhlawoffice.com |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served through ECF this 24th day of February 2023, to all counsel of record.

/s/ Benjamin T. King
Benjamin T. King